Hey. Hey. Just kidding. He said just issue. The United States Court of Appeals for Veterans Plain saying interpretation of 38 CFR for a month on the three. This regulation is the general rating formula for the evaluation of mental disorders is the basis upon which the scheduler rating is assigned for purposes of calculating compensation. Now, the ultimate facts here turn on the use of the veterans records rather than the DSM records. Evaluation scale scales being somewhat subjective. Veterans administration have a little bit more experience with dealing with PTSD and be able to and therefore wouldn't it be justified to give it away to them. But that's the problem. All of these records come from the VA that these are not different VA versus non-VA health professional. These are all VA mental health professionals. The mental health professionals relied upon by the board were exclusively VA examiners who saw Mr. Marshall for a very short period of time on a singular occasion and made by use of a gap story global assessment function and scale score a determination that his evaluation under that gap criteria was 55. However, 11 different as I understand what the VA did is it gave more weight to some of these valuations because they had more detail whereas the ones that they gave less weight to were just the score without the detail. But is that correct? Well, partially correct. The difference is that what the board relied upon were gap scores assigned by VA examiners who only saw Mr. Marshall for examination purposes. These examiners who saw him for treatment purposes and assigned gap scores were his ongoing mental health providers. We believe that there cannot be a distinction within three point excuse me four point one three oh between mental health providers from the VA. These are all the regulations. The regulation says it in terms of how the language of the regardless of the level of detail. Well, it's not a question of regardless of level of detail. It's a question of what is the function of a global assessment of function and score. A gap score is a. That's just part of the analysis. Well, except that when the VA amended its regulation, as we point out in our briefs, the VA expressly chose to go to a single criteria for the evaluation of all mental disorders, that each and every mental disorder was going to be evaluated by the same criteria. And that criteria is dependent in part not just upon the written description, but by the shorthand description used by the assignment of a global assessment of functioning score. A global assessment of functioning score. Is intended to measure the patient's overall psychological, social and occupational functioning, which necessitates the clinician's comprehensive consideration of all aspects of the patient's symptoms. It is the patient's symptoms that are to be evaluated in this assignment. And that's what the. If the case, if the board had opted the other way. Would that have given the government a basis for arguing that the regulation was incorrect or that they had violated the rules? It would potentially have given them an opportunity under their own regulation to send it back for another evaluation. Yes. They may be on the grounds that that's not what the rules. On the grounds that it was an inadequate examination for rating purposes based upon their reading of the report. The VA regulations that we cite in our brief at 4.2 talk about the return of examinations for inadequacy. So who then would have the power under our system to finally say applying the law to these facts? You win or you win. Does that have to come to us? No, I don't believe so. For veterans claims. Yes. And they have to consider according to VA regulations and specifically VA regulation 4.6, which says every element in any way affecting the probative value to be assigned the evidence in each individual claim must be thoroughly and conscientiously studied. So this is a legal issue, never a fact. I believe it is, Your Honor, because the VA consciously adopted the DSM and within the DSM, the DSM's nomenclature, and part and parcel of that nomenclature is their use of GAF scores. And the use of GAF scores in this case, and I want to correct it because Your Honor suggested that it were our experts. These were the VA treating professionals versus the VA examining. Not what I meant by that was the ones who came out of the different records. They came out of different, but 11 different records gave GAF scores of 50 or less. Somebody has to weigh all that, don't they? Ultimately, and they should weigh it equally. Do you think that weighting should be decided ultimately by the court of appeals? Or direct that the board consider all as opposed to making attribution as they did in this case, that VA examiners somehow have greater weight than VA mental health professionals. These are all mental health professionals. And the critical point here is the VA's conscious adoption of DSM and the use of GAF scores. And when you have a- The revolution doesn't say that GAF scores are going to weigh more than the VA, does it, Your Honor? No, it does not, Your Honor. But it says that everyone would say that we're going to give more weight to mental health professionals who give a greater amount than the VA, in addition to the GAF scores. But with respect, that's what the Veterans Court characterized what the board did. What the board actually did, and it's in the record at Joint Appendix 92, was to say that while the outpatient records have shown GAF scores as low as 45, they do not actually contain evidence of actual symptomatology showing a more serious disability than that referenced through the VA examination reports. The point here is, is that the reflection of that symptomatology, the actual showing of symptomatology, is by way of the assignment of a GAF score. The intent of the DSM to utilize GAF scores is to have a shorthand methodology for mental health professionals to be able to say, instead of writing out a lengthy description of the symptomatology, to be able to use this shorthand methodology of the assignment of GAF scores. But reading from the board's opinion, GAF scores are only an estimate of social and occupational functioning and are not absolutely determinative, particularly when, as here, such scores are compared to medical reports reflecting more thorough analysis and description of symptoms. Where could be the fault in that? They're looking for more detail. They're looking for the accurate assessment of this veteran's abilities. Because that excludes their mandate to be controlled in their evaluation in their single rating schedule for mental disorders by the nomenclature adopted by DSM. And part and parcel of that nomenclature is GAF scores. And you have 11 separate records showing GAF scores of 50 or less and a GAF score of 50. Because they found that the examination reports were more thorough than the outpatient reports. Again, this is according to the board. Correct. I mean the court. Because they disregarded the GAF score. They didn't speak to the GAF score. They didn't say there were 11 treating individuals who saw this veteran on a daily basis and interacted with this veteran and made an assessment under DSM using the DSM nomenclature for a GAF score of 50 or less 11 different times and two examiners decided that the correct GAF score was 55. That requires a more thorough analysis of GAF scores when DSM says that GAF scores of 50 or less describe serious symptoms or serious impairments of social occupational or social functioning, e.g. no friends or unable to keep a job. That is the criteria for a total occupational and social impairment, which is the regulatory criteria for 100%. And when you have in the record evidence that identifies using the DSM nomenclature GAF scores of 50 or less, it is simply unfair under, or excuse me, a misinterpretation of the regulation to allow for the award of the assignment of a rating without full consideration of the entirety of the award. Even you intuitively see it as an unfair result, that is an application, a misapplication of law to the facts of this case. And it's essence, Your Honor, because there's 11 treating positions. So we can't hear them. I understand that. And that's why this is presented in terms of when the VA wrote this regulation, when they changed in 1996 from a multiple criteria for psychiatric disabilities to a single set, what were they intending to do? And they adopted the DSM nomenclature, and part and parcel of that nomenclature is the GAF score. And to simply say that this evidence can be there and we're a threshold above the treating position is to put the treating position rule in reverse. We're going to say that we give more credit to examining physicians because they have more time. I don't read anywhere where they rejected them. They just said that more detailed reports deserve more weight. They reject them. They consider them. There are two records with GAFs of 55. Is there anything that says they're rejected? We're not going to consider those? Well, of course they rejected them, Your Honor, because they affirmed a 50% rating when GAF scores of 50 or less cover at least a 70% rating, if not a 100% rating. And the complaint below was that the board failed to address these 11 GAF scores that were at 50 or less. Seeing that I'm in my rebuttal time, I'd like to make a motion to adjourn the hearing. May it please the Court. Contrary to Mr. Marshall's argument, the board did carefully consider every element and every piece of evidence that was before it. On page 90 through 92 of the joint appendix, the board carefully considered both the GAF scores, the reports, and the symptoms contained in those reports. The board ultimately weighed the evidence, and the Court of Appeals for Veterans Claim found that there was no error in that weighing of the evidence. Ultimately, because Mr. Marshall's challenge involves either a challenge to the weighing of the facts of this case or a misstatement of ultimately what was done by the board, this court does not have jurisdiction over this case. The board examined each of the ratings. In cases where the rating was a lower GAF score and tied into a higher rating, the board ultimately determined that the criteria with symptoms listed alongside those ratings were not consistent with the higher 70 percent or 100 percent rating, both of which were argued by Mr. Marshall that he was entitled to. This is found in 13 of the joint appendix and 14 through 16 of the joint appendix, among others. Ultimately, there was no error in this case in following the regulations consistent with 4.6 and considering all of the record evidence in determining that Mr. Marshall was entitled to only a 50 percent rating. Mr. Marshall ruled that where you have more GAF scores, where we have 11 examples of treating physicians providing for a lower GAF score, and where we have two more detailed examinations providing for a higher GAF score and tied into a lower rating, is not supported by the regulations. Moreover, such a rule could be devastating to veterans in the context of a new material evidence case where a veteran may find himself in a situation where for a significant period of time that veteran has been given a lower rating and VA subsequently determines in a new examination report that something had been missed by previous examiners and that that veteran may be entitled to a lower GAF score, may be entitled to a higher disability score. Again, none of this is supported in the law regulation. For these reasons, and the reasons set forth in our brief, unless the Court has any questions, we respectfully request that the Court dismiss this case or affirm the decision in the next court. Thank you. Thank you, Mr. Reagan. Mr. Carpenter? I'd like to clarify the last comments by the government. The issue of new material evidence is not relevant in a case of increased compensation. The rating that is assigned is always subject to evaluation unless that rating becomes protected after 20 years. So given the example that you were just providing by the government, if there was such an examination of a decrease in symptomatology, then in fact the government would be entirely justified, unless the rating was protected, in reducing that rating. But that's not what this case is about. What the Veterans Court said was relying upon incision and grant, that gap scores are only an estimate of social and occupational function. That is inconsistent with the DSM. The DSM says that they are, in fact, the expertise of a mental health professional in making an assessment of social and occupational function. That is the basis for the rating criteria under 4.130. If gap scores are to be excluded on the basis that a VA examiner who has more time to write the examination, that turns this into an adversarial system. Because the veteran can't rely upon his own treating physician to be able to provide an evaluation by way of gap scores. He has to get that treating physician to more in detail explain that. So the duty to assist then is taken away and he now has to go out and develop that evidence either through the assistance of his own treating physician or by an independent expert to counteract those VA examinations. The purpose of the VA is to assist the veteran in getting the maximum benefit available. Under the interpretation relied upon by the Veterans Court, that does not occur. Thank you very much.